May it please the court, I'm William R. Hickman. I represent Kootenai Electric Co-op. I'd like to reserve five minutes. My client is a rural electrical co-op located in northern Idaho and a little bit into northeast Washington. Fifteen thousand customer member owners in Two of them turned out to be the judges in the eastern district, Nelson and Quackenbush, who then recused themselves. The lawsuit is, as the court knows, is about an electrical accident. The plaintiff, Mr. Kuntz. The plaintiff, Mr. Kuntz, swung his ten foot metal pole out behind him. He touched my client's wire which was 8.8 feet away from him. The code required that it only be 7.5 feet. It was where it was supposed to be, by 1.3 feet. Mr. Kuntz, in contrast, was not where he was supposed to be. There was a statute that prohibited him being within 10 feet of that wire. It was a violation of a safety statute. He was in a location where it was illegal to be. He wasn't paying attention to the wire. He swung the pole out and he was injured. Notwithstanding that the wire didn't move, but that Mr. Kuntz swung his pole out to touch it, he sued Kuntz and I, co-op, for his injuries. The wire didn't move that day, but it had moved in the recent days. It had moved several months earlier, yes, sir. But it did not move that day, that's right. The trial court ruled as a matter of law on pretrial motions that the safety statute was violated by Mr. Kuntz and that his violation of the safety statute was a proximate cause of his own injuries. But the trial court let Mr. Kuntz's claim go to the jury on a claim of ordinary negligence and a claim of reckless misconduct. We believe it was error to submit the case on the reckless misconduct claim to the jury. We believe that the court's review of the Probert case, 74 Idaho 119, will indicate the error of the court in allowing this reckless misconduct claim to go. While the case was on appeal, a second issue arose, and that is as to the subject matter jurisdiction of the trial court and, of course, this court. That broad question has now evolved into five sub-issues presented to the court. Number one, is there diversity jurisdiction in light of the fact that 50-some owner-member customers of the Kootenai Electrical Co-op live in Washington, the same as the plaintiff? Is there diversity jurisdiction when an incorporated rural electrical co-op is, in actuality, more like a partnership or a limited liability company than it is a business model corporation? And is there subject matter jurisdiction in light of the fact that a rural electrical co-op is, to quote the Fifth Circuit, an instrumentality of the United States of America? Fourth, does a rural electrical co-op have sovereign immunity because a suit against them puts at risk property which the United States of America has a first interest in? This is the U.S. versus Alabama. Finally, does a rural electrical co-op have sovereign immunity because its immunity has not been waived by the Federal Tort Claims Act? If we are correct on any one of those five, then the case has to be reversed, remanded, and ordered to be dismissed. If I am wrong on all five of the jurisdictional questions, then the court must deal with the reckless misconduct issue. I would say just because you have a lot of arguments on jurisdiction, the number of them doesn't add to the weight or validity of any of them. No, sir. They're very, you know, I think they're very imaginative arguments. I don't blame you for arguing. But I'll just say as one judge, I'm much more interested in whether the evidence was sufficient to submit the recklessness and break the cap issue to the jury. Let me begin with that, then, Your Honor. But, you know, I don't know how others feel, so I'm just letting you know how I feel. I think the law in this area, it is our position, is very clear, unlike the areas in the jurisdictional questions where I get into concepts that I don't understand, and I certainly hope this court does. But as far as submitting reckless misconduct to the jury, in a perfect world, in unlimited time today, I would walk you through the Probert case. But I can't do that. So I want to make some points about Probert and how it applies to this case. Number one, in Idaho, compliance with the electrical code is prima facie evidence of absence of fault. That's where it starts out. That's where you start the analysis. There's no violation of the code. Wire was where it was supposed to be. Start out with the presumption, prima facie evidence, that there was an absence of fault. In Probert, which was tried on ordinary negligence, and this is critical, ordinary negligence is what was considered in Probert. We're up, we've cranked it up a step. We're talking about reckless misconduct. Probert found no ordinary negligence as a matter of law, reversed the jury verdict, and dismissed the case. Here, they have a great deal more to show than was shown in Probert, and even under Probert, they haven't shown it. In Idaho, the plaintiff must show that the power company had actual knowledge that the work in question was to be done. In Probert, it was moving a steel beam from one side of the building to the other. The power company didn't know it was being done. They could not have knowledge of it, and they didn't. Probert requires actual knowledge, and in this case, not only of the activity out there, but in particular, the use of that 10-foot metal pole. Because if he wasn't using that 10-foot metal pole and swung it out behind him, he never would have touched that wire. The fourth point in Probert, prior accidents do not create constructive knowledge. In Probert, there had been two earlier accidents involving cranes touching that wire. The court said, they don't prove knowledge. You've got to have actual knowledge. Here, in this case, as your Honor is aware from reading the record, there was a great deal of talk about other things all over northern Idaho. All that came in. They don't add anything to the argument that this was reckless misconduct. Prior accidents do not constitute knowledge. The fifth point I would like to leave with you from Probert is the final part of the opinion, constructive knowledge. Constructive knowledge of a temporary condition cannot be imputed to a power company. That is the law in Idaho, and that is what we have here. If we had a temporary condition, Mr. Koontz and his crew went up on that sign that day. They were up there for 20 minutes, and the accident occurred. Under Idaho law, the power company, Kootenai Electrical Co-op, cannot be charged with constructive knowledge that they were there on a temporary assignment. Does the record tell us what happened to the billboard company, Lamar? I'm sorry, Your Honor? Does the record tell us what happened to Lamar, the billboard company? They were found liable, but they're not here now. Yes. But I don't want to know anything that's not in the record. It's in my brief. Okay. During the tail end of the trial, Lamar reached a high-low settlement with the plaintiff's attorneys, and the net result of it was Lamar paid the plaintiff $7.5 million. The plaintiffs gave them a release or satisfied the judgment, I guess, and so that $7.5 million was paid in the court, and that's Mr. Koontz's money now. Okay. Thank you. So that's why they're not here. They gave up their right to appeal as part of the settlement with the plaintiff. On constructive knowledge, on reckless misconduct, we've cited a lot of cases. As Mr. Goodfriend also points out, I've sent in a lot of supplemental authorities. But let's go focus on Probert. The one case I want you to study on this issue because it shows what Idaho law is, and under Idaho law, it didn't make it there under ordinary negligence, and if it can't make it under ordinary negligence, then it cannot make it under reckless misconduct. The trial court, in failing to direct a verdict on the reckless misconduct, misconstrued Probert. It also turned the High Voltage Act on its head. It said, in effect, that the power company was to have constructive knowledge of that which the statute required Mr. Koontz to tell them but which Mr. Koontz did not tell them. That undercuts the public policy of the statute. That is just backwards. Mr. Koontz had the obligation to follow the statute and give the power company notice. If they had received notice, they would have gone out there and covered those lines as the statute says they are supposed to. No notice to the company. The company did nothing. Mr. Koontz was injured because he touched the lines. There was reckless misconduct, Your Honor, but it was on the part of Mr. Koontz, who violated a safety statute that was designed solely to protect workmen. And Lamar, wasn't Lamar? Excuse me? Wasn't Lamar obligated to give the notice? Lamar was also, and the trial court also ruled that Lamar was negligent as a matter of law. Mr. Koontz is an independent contractor. He's not an employee of Lamar. So they both had the obligation and neither of them did it. But when it comes to sorting this thing out, the trial judge imputed knowledge, allowed knowledge to be imputed to the power company that it never received. And the reason it didn't receive it is because of a violation of the safety statute. There's no question the power company must know that somebody would work on that billboard someday. Yes, I believe that is in the record. What is also in the record is that nobody, nobody at the power company knew that these people used 10-foot metal poles. In fact, one of Plaintiff's expert witnesses, when he was testifying, it came out, he didn't even know that these people used 10-foot metal poles. That is the key, is that 10-foot metal pole. You swing it around from a position of safety and you touch the line and this is what happens. Yes, Your Honor. Isn't there a law that says that the standard is foreseeability as to the general risk, not specifically how the accident might happen? There's a line there, Your Honor, where eventually you're going to cross over into speculation. You can speculate to anything occurring. This gentleman managed to be from a position of safety, illegally in a position of safety, not looking what he's doing, swings it around. He's violating the law in the first place. He's not taking care of himself in the second place. I don't think we're charged with knowledge or anticipation that they're going to violate a safety statute and then, when they've violated the safety statute, compound it. Compound it by not taking care of yourself. He testified, yes, there was a safer way to do the job. If he had used the inside-out approach with that metal pole instead of the outside-in approach with that metal pole, he wouldn't have been hurt. He did everything wrong. I don't think any power company, I don't think power companies in general, are to be charged with knowledge that human beings can do everything wrong. There's got to be a limit. Otherwise, every wire is just an accident waiting to happen and a lawsuit waiting to occur. And that's not the way, that's not why that statute was put into place. On your Garner's issue, I would reiterate one more time, the Idaho law is set forth in Probert. The facts of this case track Probert, and Probert says the trial judge committed error in letting this issue go to the jury. On the jurisdictional questions, we have at least five, most of which involve concepts that I'm not familiar with. I've read an awful lot of Supreme Court cases and Ninth Circuit cases preparing for this. There are a few things that are given in this analysis. Federal courts are courts of limited jurisdiction, unlike state courts where everything can come in just about. You've got to fit in one of the slots. No action or inaction by the parties can create the jurisdiction. Not only that, I was surprised to read that under your general atomic rule, in this circuit, a federal court is presumed to be without jurisdiction. Well, we have a statute, at least as a starting place, that says when there's a corporation, we look at their citizenship with reference to the place of their incorporation and their primary place of business. So, I mean, here, Kootenai is a corporation. Kootenai is an unusual one, a cooperative one, one that does this, one that does that. But, you know, in a sense, it might all be a so what if the statute says here's what we do for a corporation. So, I mean, is there any authority, any legal authority, where a court has taken a corporation that's in the nature of a cooperative in function, like yours, and said we have to look at the residence of every member? Your Honor, if there was such a case, I have not been able to find it. What I found was Judge Posner, who seems to have written three or four opinions skirting this issue, he said he could not find a case that answers the question, is a non-shareholder corporation different for purposes of diversity than it is for a shareholder corporation? He couldn't find a case, so he decided one. He couldn't find the case, and then he said, well, I can't think of any reason why it shouldn't be, so I'll just do that, and then proceeded to cite himself twice more. But there was something to what he said, which is that jurisdictional tests ought to be fairly clear-cut, if we can possibly make them that way, and it would be just as well to say, well, if it's a corporation, it's a corporation. Yes, he said that, and I believe he said it now three different times. But doesn't Judge Canby write that, I mean, we need straightforward rules that govern jurisdictions so everybody knows where they can sue? If Congress said here's how we deal with a corporation, how can we make up a new rule? I think when we start looking at these cases, look at the cases on professional corporations, look at the cases on limited liability companies. That's the one that really jumps out at me. The limited liability, this thing is called a company, but in the federal side, it's treated as an association. It's not treated as a company. A company is not a term of our incorporation, yes. Yes, sir. But when we go down the list of the characteristics of a limited liability company and a corporation, there's a 90 percent identity. They're the same thing. But couldn't I file documents, presumably, with Idaho, the state of Idaho, saying we are a corporation? Yes. Yes, they did that back in 1938. Well, aren't you a little bit stopped from coming in later when you have a judgment against you to say that we're not a corporation? We're not a corporation for purposes of federal jurisdiction, federal diversity jurisdiction analysis. That, I believe, is the position we're taking. We have incorporated. Limited liability companies register with the state, just like corporations do. They don't file documents of incorporation. But they file documents of limited liability. They're not saying we're a corporation to the state. No. They're saying they're a company. Getting all the benefits of being a corporation, following all the laws related to a corporation, but then coming in later and trying to contest federal jurisdiction. The – in one of the cases, one of the many cases, pointed out that in construing the diversity statute, it is to be narrowly construed. One of the cases say the door of diversity is to not be open wide. It is to be kept narrow. And this is our point here. We may be incorporated in Idaho, but we are a rural electrical co-op. I wanted to submit material on what a co-op is, but having chastised my worthy opponent for trying to go outside the record, I couldn't do that. I know what a co-op is, but for me it's still a so what because they're a corporation. So it seems to me the non-diversity argument just runs flatly against their form of organization and the statute and any existing precedent. I don't fault you for making the argument, but if there's no precedent that says it and no statute that says it, why would we step out and be the first court to create this new rule? This is the Ninth Circuit. Okay, good answer. So with a nice creative try. I see my time is up. I will be back. Good morning, and may it please the Court. I'm Howard Goodfriend. I'm representing the plaintiff below, James Kuntz, appellee in this court. And with me at counsel table is trial counsel, Mr. Paul Levera. A properly instructed jury in this case heard substantial evidence that a utility owing the highest degree of care to persons who may come into contact with its high-voltage electrical lines, and knowing that the location of its lines posed a substantial risk because it was close to a billboard, relocated its line to a position even closer to the billboard, failed to measure the clearance, and failed to notify the billboard owner that its location had changed or that it posed a risk. And the jury, after being instructed that both Lamar and plaintiff, Mr. Kuntz, violated the Idaho High-Voltage Act by performing work within ten feet of this line, properly allocated fault as it was instructed to do, and it allocated 50 percent of the fault to KEC, the utility, 12 percent to Mr. Kuntz, and the remaining 38 percent to Lamar. It's important for this Court to note what's not at issue, either because it's not argued here or because it was conceded in the district court. First, KEC doesn't dispute that as a supplier of electricity, it owes the highest degree of care. And that instruction was given to the jury. It was instruction number 20, and there was no exception to it. KEC conceded that the duty was not just to comply with the minimum standards set forth by the National Electric Safety Code. They don't contest their libel for negligence, right? The only issue seems to be does the evidence break the $400,000 cap or not, and is there recklessness and willfulness shown by the evidence, at least the way I'm looking at it. And, you know, I grant it's a hard case, but I really think it boils down to that. I agree with you 100 percent, Your Honor. Can you highlight for me, at least as one member of the panel, what is the evidence that shows recklessness and willfulness within the meaning of that special statute? Well, first of all, the standard of recklessness was properly set forth in instructions 24 and 25, and there's no argument here that those instructions were incorrect. Therefore, KEC either knew or should have known that its conduct created an unreasonable risk of harm substantially greater than that involving negligence, that it intentionally did an act knowing or should have known that that act would result in some harm. And which is the act that supported the jury's verdict of recklessness? Was that moving the line closer and not telling anybody? There are several, and I would direct the court to the district court's analysis, which is in the record in RT 3571 when he denied the defense motion for judgment as a matter of law. First of all, this wasn't a temporary condition, despite what you've just heard from KEC. KEC was concerned before it engaged in this reconstruction project that the clearance between the existing line and the billboard was too close. But it failed to measure and it failed to determine the actual clearance. It was concerned because it thought that it violated the minimum standard set forth by the NESC, the 7.5-foot standard. It actually ordered measurements to be taken, and Mr. Hanenberg testified to that, I believe, at RT 988 and 999. KEC nonetheless relocated the lines closer to the billboard, again, without taking any specific measurements. That, again, was testified by KEC's own witnesses. And, in fact, the lower conductor, which was part of what was moved when these poles were moved, in fact did violate the NESC minimum standard for clearance. It was less than 7.5. That's true. But it's relevant to establish that KEC was, in fact, acutely aware that there was a risk involving this entire pole. Yet it nonetheless did nothing about that risk. So it had actual knowledge. And it signed off on an inspection without, as meeting the standards by the NESC, to the federal agency providing funding for it, that it was in compliance without, again, doing any measurements. Now, negligence would be if KEC perhaps had never checked this clearance, or after determining, as it did, that the clearance would be a problem, delayed for an unreasonable period of time before doing the measurements, and in that period of time an injury occurred, or attempted to notify Lamar of a lack of clearance, but through some inadvertence or mistake sent it to an incorrect address. That would be negligence. Recklessness is determining that clearance is, in fact, a problem, ordering measurements to be taken, not taking those measurements, moving the lines even closer to the billboard, and, again, not doing any measuring. That's what makes this case reckless. Now, I point out what's not at issue, Judge Gould, because the argument that you've been given by KEC is not that it doesn't meet the standard for recklessness, but basically because Mr. Kuntz was using a 10-foot metal pole, it was unforeseeable as a matter of law. That's their argument. And as they say in their brief, if it was unforeseeable as a matter of law, it can't be negligent, and thus it can't be reckless. The issue, though, is not whether it's foreseeable that Mr. Kuntz would use a 10-foot metal rod to change this final sign, because, as you pointed out, Judge Wardlaw, a defendant is not required to foresee the specific mechanism in which an injury could occur, only the general risk of harm. And as the district court noted in the argument on the post-trial motion, and I believe that's at RT 3551, well, they could have used a 10-foot ladder. They could have used grapper rods. They knew that there were catwalks there. They knew that people would be using tools to change a billboard. So whether it was a 10-foot pole, whether it was a ladder, whether it was those rods that change final signs with letters, really is immaterial. They had knowledge of the risk, and they did nothing about it. And that's why this was an issue for the jury, and it was decided properly. Now, regarding the statutory violations, the relevance of the High Voltage Act here is that KDC assumed a duty to contact owners when they were aware that a structure was located within 10 feet of a high-voltage line, not the 7.5 feet required by the NESC. But they, in fact, used themselves a standard of making sure, when they found out about a clearance problem, that it was 10 feet away. You're talking about their own company policy, right? This is their own policy. Why did they have this policy? Well, they had it because they knew, in fact, that under OSHA, a person, a non-electrical company worker, can't be within 10 feet of a high-voltage line. They knew that under the Idaho Power Act that they would be required to get notice when anyone was doing work within 10 feet of a power line. And, in fact, in a prior case involving another company, KDC notified the owner of the billboard that its sign and catwalk were too close and required that that sign and billboard be moved in excess of 10 feet away. It did the same thing with a structure, with two other structures, and those are in the record, and it was before the jury that when they had notice of a clearance problem, they would move it, not so it just complied with the NESC, because as their own witnesses testified, the NESC is a minimum standard, just the bare minimum, and that their duty was the highest degree of care, and if they had reason to believe that someone could contact their lines, their duty was to insulate or isolate. That was what they testified to, and that's what they didn't do here. Your argument is that the evidence that they didn't follow their own policy here, their internal policy, would be sufficient with the other evidence to let the recklessness go to the jury? That's correct. That's correct. They owe the highest degree of care, and that's not disputed. Actually, isn't it just the existence of the policy shows a knowledge of perceivability that meets the standard? Exactly, and that was the relevance of the High Voltage Act. The High Voltage Act did not come in to, I mean, there was no instruction to the jury that under the Idaho High Voltage Act, a utility has an obligation to maintain 10 feet of clearance. You know, there's nothing in the record to support that. The jury wasn't instructed that under OSHA, a power company has an obligation to locate its lines 10 feet, but it came in to show that KEC, in requiring 10 feet of clearance, had previously cited to other property owners both OSHA's requirements and the Idaho High Voltage Act's requirements. So they knew that 10 feet was a standard that they used, and you're exactly right, Judge Wardlaw, it goes to foreseeability. Does the Court have any questions regarding diversity? I mean, I think you've hit the nail on the head. I'd just point out briefly that it was Judge Posner who held that a professional service corporation, no matter what its attributes, is a corporation under Section 1332C. I really didn't have any question on diversity at all. I didn't have any question on any of the jurisdictional issues, except I didn't understand the dictum from the Fifth Circuit that said that the ability under the Rural Electrification Administration, if that's the right name of it, could be a federal instrumentality. It persuaded me, but it didn't seem applicable here. I would like to hear whether the Fifth Circuit case is distinguishable. There is language in several cases that for certain purposes, specific purposes. Is this an antitrust case? That's correct. Passed to the federal agency? Yeah, the Fifth Circuit case, and I'm looking for the site, I believe it was Alabama Power versus Alabama Electrical Cooperative, and that was a public utilities action under antitrust law to enjoin a loan by the Rural Electrical Administration to a rural electrical cooperative, saying that you're going to create a monopoly, it's anticompetitive, if they get this loan, they're going to put us out of business. And the court held that that action was barred by the federal government's antitrust immunity because it was so intricately tied to a policy of the federal government that it could not enforce the antitrust laws to enjoin this loan to a rural electrical cooperative. So for that purpose, they said it's an instrumentality of the federal government. And, in fact, this court in a couple of other cases arising out of Washington, when public utilities tried to condemn under state laws they're empowered to do, the transmission lines and service facilities of rural electrical cooperatives also held that under federal preemption analysis they would not apply a Washington statute to allow a competing public utility to take over the assets of a rural electrical cooperative under condemnation law because it would defeat the federal policy behind the REA. So it's a functional analysis. And as we point out in our brief, the implication of their sovereign immunity argument is that any time the federal government makes a loan to anybody, the recipient of that loan becomes the federal government for purposes of the Tort Claims Act. And that's a position that's been soundly rejected by any court that's considered it, including this court. I'd like to conclude by noting that you heard a very impassioned argument relating to perceivability and recklessness in this case, and you'll probably hear one on rebuttal, I don't doubt it.  All these facts have to be resolved in the light most favorable to Mr. Kuntz at this point. And I urge you to relook at the district court's cogent analysis of the facts that were before the jury, which met each of the standards that were set forth in its Instruction 25 on recklessness. The evidence was there, and the judgment should be affirmed. Thank you. Thank you. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. Your Honor asked me for one case on the corporation issue, which I couldn't provide you. But I did provide you one case that says a rural electrical co-op is an instrumentality of the United States. That's the Fifth Circuit case. They said it. I ran it on Sunday, and it's still the law in the Fifth Circuit. It's sort of like a dictum as part of their reasoning in an antitrust case. I don't know how far you can ride that sentence. Well, this Court has quoted the language and said we don't have to analyze it at this point in time because the uniqueness of the federal rural electrical program means that state actions contrary to that program just simply cannot stand under the supremacy clause of this Constitution. Your Honor, the thrust of your argument is that this puts you under the Federal Tort Claims Act and there hasn't been exhaustion or something like that. That's... There's no problem in suing an instrumentality in tort. If there's been a waiver of liability. Excuse me. If there's been a waiver. That's with the Federal Tort Claims Act. Yes. And I researched the Rural Electrical Code again, and I don't find a waiver. But that's... As I mentioned earlier, the concepts here are varied. I saw last week the U.S. Supreme Court reversed this court in the Flamingo case where the U.S. Supreme Court has now held that the post office cannot be sued under the Sherman Act. But this Court had said that they could, having done the analysis. So these things seem to be a bit on quicksand. I would close with pointing out, going back to your Honor's issue, and the points made by Mr. Goodfriend are covered in Probert. He talks about other accidents again. He talks about other things that the electrical company did. Probert says that's not relevant. The issue is what was going on out there. Was it a temporary situation, moving that beam from one side of the building to the other, where the crane could hit that wire? What we had up there was a temporary situation. Mr. Kuntz, with his 10-foot pole, swung it out, contacted a wire that was legally where it was supposed to be, and he was illegal where he was. Thank you for your attention. Thank you, counsel. The case versus Fairmarket Cooperative will be submitted. We will take up Mann's Counsel v. Bradley Powell et al. Thank you. Thank you. Thank you.
judges: Canby, Wardlaw, Gould